IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

SAMANTHA REED-RAJAPAKSE,          )
                                   )
     Plaintiff,                    )
                                   )
vs.                                )
                                   )
BAKER DONELSON BEARMAN CALDWELL    )          No. 13-2328-JDT-dkv
AND BERKOWITZ, P.C.; DAVID         )
BEARMAN; THE CITY OF MEMPHIS;      )
THE CITY OF MEMPHIS LAW            )
DIVISION; HERMAN MORRIS; and       )
ROBERT RATTON, III,                )
                                   )
     Defendants.                   )

_____

REPORT AND RECOMMENDATION OF *SUA SPONTE* DISMISSAL

_____

On May 17, 2013, the plaintiff, Samantha Reed-Rajapakse ("Rajapakse"), filed a *pro se* complaint alleging violations of various federal and Tennessee statutes, the Tennessee Code of Professional Responsibility, and "her 14th Amendment rights" against six defendants: (1) Baker, Donelson, Bearman, Caldwell, and Berkowitz, P.C. ("Baker Donelson"); (2) David Bearman, shareholder of Baker Donelson ("Bearman"); (3) the City of Memphis ("the city"); (4) the City of Memphis Law Division ("the Law Division"); (5) Herman Morris, City Attorney for the City of Memphis ("Morris"); and (6) Robert Ratton, III, of the City of Memphis Law Division ("Ratton"). (Compl., D.E. 1.) On May 28, 2013, pursuant to this district's administrative order referring

all nonprisoner *pro se* cases to the assigned magistrate judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate, the magistrate judge issued an order granting Rajapakse leave to proceed *in forma pauperis*, (Order, D.E. 5).  It is now recommended that this case be dismissed for the reasons that follow.

I.    PROPOSED FINDINGS OF FACT

Rajapakse's complaint is styled a "COMPLAINT . . . FOR VIOLATION OF STATE AND FEDERAL STATUE [sic], OBSTRUCTION OF JUSTICE, AND INTERFERENCE IN AN [sic] PENDING LITIGATION OF ETHICS OF AN ANTI TRUST COMPLAINT AND DEPRAIVATION [sic] OF RIGHTS SUIT." (Compl., D.E. 1.)   In it, Rajapakse alleges that all defendants violated her Fourteenth Amendment right to due process, for which violation she purports to sue them "under [the] Civil Rights Act of 1983;" that all defendants violated "the Sherman and Clayton Anti Trust [Acts];" and that all defendants participated in unethical conduct under "the Tennessee Board of Professional Responsibility Code 8." (*Id.* at 2.)   Additionally, she alleges that Bearman and Baker Donelson violated Tennessee Code Annotated section 39-16-403(A)(2); that Bearman and Ratton violated Tennessee Code Annotated section 39-16-402; that Ratton alone violated Tennessee Code Annotated section 39-16-501(A)(1)(b) as well as what she terms the "Tennessee Tort Act" and the "Tennessee Government Tort Act;"

and that Bearman alone violated Tennessee Code Annotated section "39-16-401(1)(2)(A)(1)." (*Id.*) She also alleges that all defendants except Morris retaliated against her in violation of the Americans with Disabilities Act. (*Id.* at 3.) To remedy these alleged violations, she seeks "immediate injunctive relief" (although she does not specify the nature of any such relief) and several million dollars in damages. (*Id.* at 4, 8.)

Rajapakse's claims in this case all purport to arise from actions taken by the defendants in the course of litigating another suit that Rajapakse filed in this district back in September of 2012. The subject of that suit, Case No. 12-2807-JDT-dkv, was a billing dispute and subsequent termination of services on Rajapakse's utilities account. Named as defendants in that suit were Memphis, Light, Gas, and Water Division ("MLGW"), MLGW's president, the City of Memphis, and the mayor of Memphis. *See* Complaint, Reed-Rajapakse v. Memphis, Light, Gas, and Water, et al., No. 12-2807-JDT-dkv (W.D. Tenn. Sept. 18, 2012), ECF No. 1. In that suit (hereinafter *Rajapakse I*), Baker Donelson was retained to represent MLGW, and Bearman served (and continues to serve) as lead counsel. Ratton served (and continues to serve) as lead counsel for the City of Memphis in that suit.

The factual allegations in the complaint (in the present case) are largely undecipherable. All that can be deciphered

from Rajapakse's pleadings is that she is alleging she repeatedly apprised Bearman (often via email) of the fact that, even after she filed her suit in *Rajapakse I* in September 2012 and while the parties were awaiting the conclusion of the magistrate judge's *pro se* screening of her complaint in that case, his client MLGW continued to actively seek collection of the amount in dispute on her account—in a manner that Rajapakse characterizes as "harassment" and "intimidation"—and ultimately terminated her utility services for nonpayment of that disputed amount. (Compl., D.E. 1 at 5–7.) According to Rajapakse, Bearman ignored and failed to "resol[ve] the matter" and eventually, on behalf of MLGW, filed a counterclaim against her in *Rajapakse I*, seeking to recover from her "the same disputed amount." (*Id.* at 5–6.) She alleges that Bearman informed her "that despite the fact it was an issue before the court, MLGW had the right to place the same disputed amount before the court." (*Id.* at 6.)

According to Rajapakse, Bearman is liable to her for this conduct because in "his position as Lead Counsel, he has allowed and even assisted [and] is the main driving force in advising his client and other counsel to violate the court and Plaintiff by not allowing due process of the courts." (*Id.* at 7.) As Rajapakse would have it, "[i]f the Attorney assist[s] or stand[s] by with full knowledge of his client['s] continue[d]

wrong doing against another party [he] is just as guilty as the original person committing the wrong doing." (*Id.*) She also alleges that Bearman assisted Ratton and other attorneys "in orchestrating an unethical legal tactic to either force" her into bankruptcy so that an automatic stay would be imposed in *Rajapakse I* or force her "to pay the error amount to keep her services on causing the court to" regard the "counter claim [in *Rajapakse I*] as valid." (*Id.* at 5.)

Rajapakse also appears to allege that Bearman and Ratton together acted unlawfully in attempting to have their clients be served with process as to Rajapakse's complaint in *Rajapakse I* and in failing to contact her to "resolv[e]" the billing dispute. (*Id.* at 6.) In addition, she alleges that Ratton withheld evidence in *Rajapakse I* "which is part of the public record." (*Id.*)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  28 U.S.C. § 1915(e)(2) Screening

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). This report and recommendation will constitute the court's screening.

B.  <u>Standard of Review for Failure to State a Claim</u>

In assessing whether the Second Amended Complaint states a claim upon which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). "Accepting all well-pleaded allegations in the complaint as true, the court considers the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Willams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

Rule 8(a)(2) requires "[a] pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint violates these provisions when it "is so verbose that the Court

cannot identify with clarity the claim(s) of the pleader and adjudicate such claim(s) understandingly on the merits." *Harrell v. Dirs. of Bureau of Narcotics & Dangerous Drugs*, 70 F.R.D. 444, 446 (E.D. Tenn. 1975); *see also Flayter v. Wis. Dep't of Corr.*, 16 F. App'x 507, 509 (7th Cir. 2001)(dismissing 116-page complaint pursuant to Rule 8(a)(2)); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) (criticizing district court for declining to dismiss amended complaint with prejudice pursuant to Rule 8(a) and noting that "[a] complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation"); *Plymale v. Freeman*, 930 F.2d 919 (table), 1991 WL 54882, at *1 (6th Cir. Apr. 12, 1991)(finding that district court did not abuse its discretion in dismissing with prejudice "rambling" 119-page complaint containing nonsensical claims); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990)("A . . . complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is presented and if so what it is. And it must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of that understanding.")(citation omitted)(internal quotation marks omitted); *Michaelis v. Neb. State Bar Ass'n*, 717 F.2d 437, 438-

39 (8th Cir. 1983)(per curiam)(affirming dismissal of 98-page complaint where "[t]he style and prolixity of these pleadings would have made an orderly trial impossible"); *Gordon v. Green*, 602 F.2d 743, 744-45 (5th Cir. 1979)(concluding that a 4000-page pleading, comprised of "various complaints, amendments, amended amendments, amendments to amended amendments, and other related papers," did not comply with Rule 8(a) "as a matter of law"); *Windsor v. A Federal Exec. Agency*, 614 F. Supp. 1255, 1258 (M.D. Tenn. 1983)(noting that a 47-page complaint was excessive, in light of the purpose of a pleading to state a simple claim, as well as "confusing and distracting" and ordering plaintiff to amend his complaint to comply with Rule 8), *aff'd mem.*, 767 F.2d 923 (table), 1985 WL 13427 (6th Cir. June 27, 1985)(per curiam).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant

to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C.  <u>Absence of Factual Allegations against the City, the Law Division, and Morris</u>

Even before analyzing the sufficiency of Rajapakse's complaint under each alleged theory of recovery, this court recommends, based on a simple reading of the complaint, that the complaint be dismissed in full as against defendants Morris, the Law Division, and the City. Rajapakse has only stated legal conclusions as to the various statutes and the constitutional amendment that she alleges these defendants violated; she has not stated a single factual allegation against the City, the Law Division, or Morris anywhere in the complaint. The only

reference in the complaint (beyond mere legal conclusions) to the City is a statement that Rajapakse has a pending lawsuit (*Rajapakse I*) against the City and others. (Compl., D.E. 1 at 4.) The only reference to the Law Division is an allegation that it is part of the City of Memphis. (*Id.*) The only reference to Morris is an allegation that the Law Division is "under the appointment" of him. (*Id.*) It is therefore recommended that all claims in the complaint be dismissed as against the City, the Law Division, and Morris for failure to state a claim upon which relief can be granted. *Cf. Bloodworth v. Timmerman-Cooper*, No. 2:10-CV-1122, 2012 WL 5830395, at *2 (S.D. Ohio Nov. 16, 2012)(recommending dismissal of a defendant because the complaint contained "no factual allegations whatsoever against [that defendant], let alone facts sufficient to state a colorable claim against him")(footnote omitted), *report and recommendation adopted*, 2012 WL 6193243 (S.D. Ohio Dec. 12, 2012); *Harris v. Arme*, No. 307-CV-184, 2007 WL 1725635, at *1 (E.D. Tenn. June 13, 2007)("Plaintiff has made no factual allegations whatsoever against defendant Terry Arme and Terry Arme is DISMISSED as a defendant.").

C.   Fourteenth Amendment Claim

The complaint purports to allege a claim against the defendants under the "Civil Rights Act of 1983" for violation of Rajapakse's right to due process under the Fourteenth Amendment.

There being no "Civil Rights Act of 1983," the court presumes that Rajapakse intended instead to bring her claim under 42 U.S.C. § 1983, which provides a remedy for certain violations of, *inter alia*, individual rights under the Fourteenth Amendment to the United States Constitution. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983. It provides a method of seeking redress of deprivation of federal constitutional rights and federal statutory rights. *Albright v. Oliver*, 510 U.S. 266 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the United States Constitution or federal statutory law, and (2) that the defendant deprived the plaintiff of this federal right under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

To begin, Rajapakse's complaint fails to state a section 1983 claim against Bearman, a private attorney, and against the private law firm of Baker Donelson, because neither Bearman nor Baker Donelson acted under color of state law with respect to

the alleged constitutional violation.  A party acts "under color of state law" when exercising "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk Cnty. v. Dodson*, 454 U.S. 312, 329 (1981)(internal citations omitted).  In general, "[p]rivate attorneys are not considered to be state actors for purposes of § 1983." *Cudejko v. Goldstein*, 22 F. App'x 484, 485 (6th Cir. 2001)(citing *Polk Cnty.*, 454 U.S. at 318).  The only connection between Bearman and the state (of Tennessee) and between Baker Donelson and the state is that Baker Donelson and Bearman were retained by and are indeed providing legal services to MLGW, a municipal utility provider, in relation to *Rajapakse I*.  However, "attorneys do not become state actors by representing state or local governments." *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009)(holding that private attorney representing board of education was not a state actor subject to suit under section 1983).

Although private parties may act under color of state law for purposes of section 1983 liability when they act in concert with state officials, *see Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980), Rajapakse has not sufficiently pled any such conspiracy between Baker Donelson and the state or between Bearman and the state.  Importantly, "[a]n attorney representing a client cannot

'conspire' within the attorney-client relationship." *Horen*, 594 F. Supp. 2d at 842 (citing, *inter alia*, *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 339–40 (6th Cir. 1984)). Also, Rajapakse simply does not allege that there was a concerted effort between Bearman and/or Baker Donelson and MLGW to effectuate any alleged constitutional violation; she merely alleges that Bearman advised MLGW on the billing dispute and was aware of the actions that MLGW was taking against Rajapakse. That is not sufficient to rise to the level of a claim of conspiracy between these parties. *See Horen*, 594 F. Supp. 2d at 842 ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.")(citation and internal quotation marks omitted); *cf. Baker v. Smith*, 72 F. App'x 339, 341 (6th Cir. 2003)(finding private attorney not subject to section 1983 liability because there was no "factual support or evidence upon which a conspiracy could be based"). It is therefore recommended that Rajapakse's section 1983 claim be dismissed as to Bearman and Baker Donelson for failure to state a claim as these defendants are not state actors acting under color of state law.[1]

---

[1]  In recommending dismissal, the court is mindful of *Filarsky v. Delia*, 132 S. Ct. 1657 (2012), a recent case in which the

As to defendant Ratton, the complaint fails to state a claim under section 1983 because it is entirely devoid of any factual support for an inference that Ratton effected a deprivation remediable by section 1983. Although the complaint repeatedly refers to Rajapakse's "14th Amendment Rights," it only once mentions "due process" (and even then it alleges Rajapakse's right to "[d]ue," leaving the word "process" out, *see* Compl., D.E. 1 at 2), without any supporting allegations or additional explanation. The extent of the factual allegations against Ratton in the complaint are that he failed to contact her, withheld evidence from her, and sought to have his client served with process in *Rajapakse I*. None of those allegations support an inference that Ratton effected the deprivation of any Fourteenth Amendment-protected right of Rajapakse's to "life,

---

United States Supreme Court treated as having acted under color of state law for purposes of section 1983 a private attorney who was retained by the city to assist in conducting an official investigation into a firefighter's potential wrongdoing. The present case, however, is more akin to *Richardson v. McKnight*, 541 U.S. 399 (1997), in which the Supreme Court regarded as private actors *not* acting under color of state law, two prison guards who were employees of a private, for-profit corporation in contract with the state to manage a state correctional center. Unlike the private attorney in *Filarsky*, Bearman does not "serv[e] as an adjunct to government in an essential government activity, or act[] under close official supervision," *see Richardson*, 521 U.S. at 413. Instead, like the prison guards in *Richardson*, Bearman is affiliated with a private firm retained to provide a unique brand of services to the state (or, here, to MLGW) "with limited direct supervision by the state." *see Richardson*, 521 U.S. at 413.

liberty, or property." Accordingly, this court concludes that because Rajapakse fails to state a claim under 42 U.S.C. § 1983 against Ratton as well. It is recommended that such claim be dismissed.

D.  <u>Sherman and Clayton Act Antitrust Claims</u>

The complaint purports to raise claims against the defendants for violation of "the Sherman and Clayton Anti[trust Acts] by using unethical tactics in swaying the court to prevail in their favor by retailing [sic] against Plaintiff committing fraud, deceptive practices, causing harm, intimidation, deprivation of enjoyment of life, humiliation, and threatening her using their client services." (Compl., D.E. 1 at 2.) She cites to no provision of either Act.

The Sherman and Clayton Antitrust Acts, as indicated by their names, concern and prohibit certain business activities of an anticompetitive nature. None of Rajapakse's allegations in support of her antitrust claims against the defendants concern anticompetitive conduct. Based on that fact, and the fact that she does not specify any specific statutory provisions of the Sherman Act or Clayton Act under which she brings suit, this court concludes that she fails to state a claim under those Acts. As such, it is recommended that Rajapakse's federal antitrust claims be dismissed.

E.  <u>Americans with Disabilities Act Claim</u>

Rajapakse alleges that Bearman, Ratton, and Baker Donelson retaliated against her in violation of the Americans with Disabilities Act "by assisting, promoting, encouraging, and implementing retaliation against her for filing a claim against their Client, [MLGW], City of Memphis and its officials and acting agents." (Compl., D.E. 1 at 3.) The disability alleged is "Type 2 Diabetes," the diagnosis of which Rajapakse asserts "she has made full knowledge." (*Id.* at 5.)

To state a disability retaliation claim under the Americans with Disabilities Act ("ADA"), Rajapakse must allege that: (1) she engaged in activity protected under the ADA; (2) the defendants knew of this protected activity; (3) the defendants then took adverse action against her; and (4) there was a causal connection between the protected activity and the adverse action. *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)(citing *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001)).

To withstand dismissal for failure to state a claim, a complaint "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Rajapakse's complaint fails to do so here as to her ADA claim. The activity for which she alleges she was retaliated against is her filing

suit in *Rajapakse I*. Neither the original complaint in *Rajapakse I* nor any of the purported amendments to that complaint allege a claim under the ADA. As such, the filing of suit in *Rajapakse I* did not constitute protected activity under the ADA. Rajapakse has failed to allege an essential element of her retaliation claim under the ADA, and her complaint therefore fails to state such a claim. It is recommended that this claim be dismissed.

F.  <u>State-Law Claims</u>

    1.  *Applicability of Tennessee's Litigation Privilege*

The conduct that Rajapakse alleges as to Bearman, Ratton, and Baker Donelson, which conduct forms the basis for her complaint in this case, is conduct engaged in by those defendants as attorneys in the course of representing their clients in active litigation. Thus invokes what is known as Tennessee's "litigation privilege." This privilege protects an attorney and immunizes him from suit when the following factors are present: (1) the attorney was acting in the capacity of counsel for a client or identifiable prospective client when the conduct occurred, (2) the attorney was acting in good faith for the benefit of and on behalf of the client or prospective client, not for the attorney's self-interest, (3) the conduct was related to the subject matter of active litigation or proposed litigation that was under serious consideration by the

attorney, and (4) there was a real nexus between the attorney's conduct and that litigation. *Unarco Material Handling, Inc. v. Liberato*, 317 S.W.3d 227, 238 (Tenn. Ct. App. 2010).[2] The litigation privilege in Tennessee is absolute. *Id.* (citations omitted).

All four of the *Unarco* factors are present here. First, Bearman, on behalf of Baker Donelson, and Ratton were acting in the capacity of counsel for their respective clients when the conduct of which Rajapakse complains allegedly occurred. Second, Rajapakse does not allege that in engaging in the allegedly wrongful conduct, Bearman and/or Ratton were acting in their own self-interests as opposed to the interests of their respective clients. Third, the conduct alleged intimately relates to the subject matter of the litigation, namely *Rajapakse I*. Lastly, all of the complained-of actions were taken either in the course of or collaterally to the litigation of *Rajapakse I* such that there was a "real nexus" between Bearman's and Ratton's alleged conduct and the litigation. Accordingly, Rajapakse's state-law claims are subject to

---

[2] Traditionally, the litigation privilege in Tennessee applied only to defamation claims and later only to conduct of a communicative nature. Recently, however, the Tennessee Court of Appeals extended the privilege to noncommunicative conduct in the context of a claim for intentional interference with contract, *see Unarco Material Handling, Inc. v. Liberato*, 317 S.W.3d 227 (Tenn. Ct. App. 2010).

dismissal based on the applicability of Tennessee's litigation privilege.

### 2. *"Tennessee Tort Act"* and *"Tennessee Government Tort Act"* Claims

Rajapakse purports to sue the defendant Ratton under the "Tennessee Tort Act" and "Tennessee Government Tort Act" for "committing a wrongful act during pending litigation resulting in damages and injuries to Plaintiff." (Compl., D.E. 1 at 2.) The court presumes Rajapakse intended to invoke the Tennessee Governmental Tort Liability Act, T.C.A. § 29-20-101 *et seq.*, which *inter alia*, removes governmental immunity for certain types of tort claims. In this case, Rajapakse has not alleged that Ratton (or any other defendant) committed a tort against her. As such, Rajapakse fails to state a Tennessee Governmental Tort Liability Act claim.

### 3. *"Tennessee Board of Professional Responsibility Code 8"* Claim

The complaint purports to assert claims against the defendants under "the Tennessee Board of Professional Responsibility Code 8." (Compl., D.E. 1 at 2.) Rule 8 of Tennessee's "Rules of Professional Conduct" is the "Preamble and Scope" of the Rules. Rule 8, by its very terms, states:

> Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. . . . The Rules are designed to provide guidance to lawyers and to provide a structure for

> regulation conduct through disciplinary agencies. They
> are not designed to be a basis for civil liability.

Tenn. Sup. Ct. R. 8, Rule 8 ¶ 21.  As it expressly states, Rule 8 does not provide a private right of action, and thus it is recommended that Rajapakse's claim under Rule 8 be dismissed for failure to state a claim.

4.  *Claim under T.C.A. § 39-16-401(1)(2)(A)(1)*

The complaint asserts that Bearman violated T.C.A. § 39-16-401(1)(2)(A)(1).  There is no such subsection under section 39-16-401.  Furthermore, and more importantly, this section of the Tennessee Code Annotated is a definition section for part 4 of the code, containing the criminal offenses for "Misconduct Involving Public Officials and Employees."  Section 39-16-401 does not provide a private right of action because it is but a definition section applicable to certain criminal offenses delineated in surrounding sections.  As such, Rajapakse fails to state a claim under section 39-16-401.

5.  *Claims under T.C.A. § 39-16-402 & 39-16-402(A)(1)*

Rajapakse alleges in her complaint that Ratton violated T.C.A. § 39-16-402 and that Bearman violated, specifically, T.C.A. § 39-16-402(A)(1).  Section 39-16-402 provides a generic criminal offense for public officials who abuse their offices for improper purposes.  Section 39-16-402 "do[es] not create a private right of action."  *Davis v. Earls*, No. W2000-00280-COA-

R3-CV, 2001 WL 589138, at *3 (Tenn. Ct. App. May 30, 2001); *see also Kovach v. Metro. Gov't of Nashville*, 3:09-CV-0886, 2010 WL 1628792 (M.D. Tenn. Mar. 25, 2010)("[Section 39-16-402] clearly defines a criminal offense and does not provide for a private right of action."), *report and recommendation adopted sub nom.*, 2010 WL 1628787 (M.D. Tenn. Apr. 21, 2010). Accordingly, Rajapakse fails to state a claim under this statutory provision.

6. *Claim under T.C.A. § 39-16-403(A)(2)*

Rajapakse also alleges that Bearman and Baker Donelson violated T.C.A. § 39-16-403(A)(2). Section 39-16-403 makes it a criminal offense for a public official to intentionally use his office to violate citizen's rights. Again, this criminal statute does not confer a private right of action, *Davis*, 2001 WL 589138, at *3, and Rajapakse therefore fails to state a claim under it.

7. *Claim under T.C.A. § 39-16-501(A)(1)(b)*

The complaint cites to T.C.A. § 39-16-501(A)(1)(b) in reference to Ratton's alleged commission of "a wrongful act during pending litigation." Here, again, there is no such subsection under Section 39-16-501 and, again, Section 39-16-501 is but a definitional section corresponding to various criminal offenses. It does not create a private right of action and therefore cannot form the basis of a claim against Ratton.

8. *Subject-Matter Jurisdiction over State-Law Claims*

As an additional basis for dismissal of Rajapakse's state-law claims, the court lacks subject-matter jurisdiction over such claims.  There is no diversity of citizenship between the parties in this case, and the court has recommended dismissal of all federal claims for failure to state a claim upon which relief can be granted.  As such, there is no subject-matter jurisdiction over the supplemental state-law claims.

III.  RECOMMENDATION

For the foregoing reasons, it is recommended that the entirety of Rajapakse's complaint be dismissed for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. 1915(e)(2)(B)(ii), and *sua sponte* for lack of subject-matter jurisdiction as to the state-law claims.

Respectfully submitted this 12th day of July, 2013.

s/ Diane K. Vescovo<br>Diane K. Vescovo<br>United States Magistrate Judge

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  FED. R. CIV. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.